IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| WENDY J. DUKES and ALICIA M. HINTON, | * |
| | * |
| Plaintiffs, | |
| | * |
| vs. | CASE NO. 4:22-cv-176 (CDL) |
| | * |
| COMPREHENSIVE CONTINGENCY TASK FORCE LLC d/b/a CCTF RAPID READY *et al.*, | * |
| | * |
| Defendants. | |

O R D E R

Plaintiffs Wendy Dukes and Alicia Hinton filed this action to recover unpaid wages and overtime pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Presently pending before the Court are the parties' cross-motions for summary judgment. For the reasons that follow, Plaintiffs' motion for summary judgment (ECF No. 17) is granted in part and denied in part. Defendants' motion for summary judgment (ECF No. 16) is denied.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence

is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

Plaintiffs Wendy Dukes and Alicia Hinton were employed by Comprehensive Contingency Task Force ("CCTF"), which provided military readiness and deployment services to civilian contractors. Dukes worked at CCTF from January 2010 through either March 28, 2022 or April 5, 2022.[1] CCTF first hired Dukes as a receptionist, and she later became the Office Manager for all CCTF offices. Hinton worked at CCTF as a Deployment Specialist from May 2016 through April 26, 2022. Dukes claims that she was not paid any wages for ten weeks of work occurring between December 20, 2021 and April 5, 2022. Hinton claims she was not paid any wages for three weeks of work—April 7, 2022 through April 27, 2022. Both Plaintiffs contend that they worked forty-two to forty-five hours per week on average and were never paid overtime wages.

---

[1] The parties dispute the last day of Dukes's employment. Defendants argue that her last day was March 28, 2022, while Dukes contends her last day was April 5, 2022.

From CCTF's inception in 2009 through its closing in late April 2022, Michele Johansen served as CCTF's Chief Executive Officer and sole member. Johansen initially ran many of CCTF's operations; Tabatha Garrett, CCTF's Chief Operating Officer, subsequently became increasingly central to CCTF's day-to-day operations, while Johansen maintained control over company finances.

## DISCUSSION

The FLSA requires that employers meet minimum wage and overtime requirements for employees engaged in interstate commerce. 29 U.S.C. §§ 202, 206, 207. If an employer does not comply with those requirements, the FLSA provides employees with a private cause of action to collect those unpaid wages. *Id.* § 216(b). The parties filed cross-motions for summary judgment on several elements of their claims and defenses. Defendants do not dispute that Plaintiffs were "engaged in commerce" within the meaning of the FLSA, so Plaintiffs are entitled to summary judgment on this issue. The remaining issues presented by the parties' motions are (1) whether Johansen was Plaintiffs' "employer," (2) whether Plaintiffs were exempt from FLSA coverage, (3) whether Defendants failed to pay Plaintiffs wages they were entitled to under the FLSA, and (4) whether any FLSA violations were willful. The Court addresses each issue in turn.

**I.   Was Johansen Plaintiffs' "Employer" Under the FLSA?**

Plaintiffs have sued both CCTF and Johansen as their employers. The FLSA requires every "employer" to meet the minimum wage and overtime requirements. Johansen argues that she was not Plaintiffs' "employer" as a matter of law and thus cannot be held liable under the FLSA. The FLSA defines "employer" broadly as "both the employer for whom the employee directly works as well as 'any person acting directly or indirectly in the interests of an employer in relation to an employee.'" 29 U.S.C. § 203(d); *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1309 (11th Cir. 2013) (quoting *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011)). It is well recognized that "a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Lamonica*, 711 F.3d at 1309 (quoting *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986)). To "support individual liability, there must be control over 'significant aspects of the company's day-to-day functions, including compensation of employees or other matters in relation to an employee.'" *Id.* at 1314 (alteration omitted) (quoting *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008)). Control "need not be continuous," but it must be "both substantial and related to the company's FLSA obligations." *Id.*

4

Plaintiffs argue that because Johansen is the sole member and CEO of CCTF, and in control of its finances, there is no genuine factual dispute that Johansen was their "employer" within the meaning of the FLSA. Johansen responds that factual disputes exist as to whether she was Dukes's employer. As to Hinton, Johansen argues that she is entitled to summary judgment on this issue because she had no meaningful interaction, communication, or supervision role with her.

The present record establishes that Johansen was an FLSA "employer" for both Dukes and Hinton. Defendants do not seriously dispute that Johansen had essentially complete control over CCTF's finances. Plaintiffs also pointed to unrebutted evidence that Johansen commingled her personal funds with the company account, sometimes paying her mortgage from company funds and, at other times, paying CCTF expenses like insurance, rents, and payroll out of her own personal funds. She monitored the CCTF financial accounts daily and transferred funds between CCTF's and her personal accounts regularly. When the company began experiencing financial distress, Johansen assumed personal responsibility for when, how, and if CCTF employees were paid. Johansen Dep. 129:6–19, ECF No. 19. After the IRS imposed a levy on CCTF, she monitored the CCTF payroll account such that it always maintained a zero-dollar balance. As a result, employees could not cash their paychecks without her direct approval or cooperation. *See*

5

*Lamonica*, 711 F.3d at 1314 (concluding that a jury had a legally sufficient basis to hold a corporate supervisor who owned a 22.5% stake in the company and used his own funds to cover the company's payroll obligations individually liable under the FLSA).

Although Defendants point to evidence that Johansen was not physically present in the workplace most days, they do not dispute that Johansen and Garrett were in constant contact throughout the day. Johansen Dep. 95:5-9. Indeed, the correspondence between Johansen and Garrett demonstrates that Johansen worked closely with Garrett to make decisions on payroll and other financial matters. On at least one occasion, for example, Johansen told Garrett that the "top tier," which included both Plaintiffs, would have to wait to cash their checks. Johansen Dep. Ex. 7, Text Messages (Sept. 15, 2021, 7:05 AM), ECF No. 19-7. On another occasion, Garrett asked Johansen for direction regarding how much money to allocate towards payroll and rent given CCTF's limited resources. Johansen Dep. Ex. 9, Text Messages (Dec. 3, 2022), ECF No. 19-9 at 1, 16, 19. Johansen made the decision to continue operating despite CCTF's financial troubles which included the failure to timely meet payroll obligations. *See* Johansen Dep. 173:10-13 (explaining that she gave employees "a choice: either quit, get furloughed, get unemployment, or work, knowing they would get a late check"). The record is replete with other instances demonstrating that Johansen had direct control over CCTF's

finances, including whether and how much employees were paid. *See, e.g.*, Pls.' Reply to Defs.' Resp. to Mot. Summ. J. Ex. A, Text Message from Johansen to Garrett (Apr. 5, 2022, 1:37 PM), ECF No. 24-1 at 58 ("Well before I transfer it I want to be able to know they will continue working"); Johansen Dep. 170:6-16 (stating that Johansen instructed Garrett to, "Start from the oldest first and pay them."); Johansen Dep. at 171:7-25 (explaining that she fired some employees and gave others the options of holding their checks or being furloughed). Based upon well-established FLSA precedent, the present record establishes that Johansen was the "employer" for each Plaintiff within the meaning of the FLSA. Plaintiffs' motion for summary judgment on this ground is granted. Defendants' motion is denied.

## II.  Are Plaintiffs Administratively Exempt?

Defendants contest whether the FLSA's minimum wage and maximum hour requirements even apply to Plaintiffs. They argue that Dukes was administratively exempt as a matter of law but acknowledge that genuine factual disputes exist as to Hinton's exempt status.[2] Plaintiffs maintain that the present record establishes as a matter of law that the FLSA administrative exemption does not apply to either of them.

---

[2] The exemptions of 29 U.S.C. § 213 are affirmative defenses on which the employer has the burden of proof. If an employer prevails on this affirmative defense, it is not liable on the employee's FLSA claim.

The FLSA's requirements do not apply to an employee employed in a bona fide administrative capacity. 29 U.S.C. § 213(a)(1). To demonstrate that an employee falls within the "administrative exemption," a defendant must establish by "clear and affirmative evidence" that (1) the employee was engaged in work where the "primary duty" was the performance of office or nonmanual work directly related to the management or general business operations of the employer or the employer's customers; (2) those duties include the exercise of discretion and independent judgment with respect to matters of significance; and (3) the employee was paid on a salary basis of not less than $684.00 per week. 29 C.F.R. § 541.200(a)(1)-(3); *Fowler v. OSP Prevention Grp., Inc.*, 38 F.4th 103, 105-06 (11th Cir. 2022). Plaintiffs do not dispute that they meet the first prong; and the Court finds, as explained below, that genuine factual disputes exist as to the second and third prongs. Therefore, neither Plaintiffs nor Defendants are entitled to summary judgment on this defense.

To meet the second prong (the "discretion and independent judgment" prong) "an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.202(a). "[T]he exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."

*Id.* While the regulation outlines numerous factors to guide that inquiry, *id.* § 541.202(b), the "ultimate question is whether the employee has the ability 'to make an independent choice, free from immediate direction or supervision.'" *Rock v. Ray Anthony Int'l, LLC*, 380 F. App'x 875, 879 (11th Cir. 2010) (per curiam) (quoting 29 C.F.R. § 541.202(c)). The term "'matters of significance' refers to the level of importance or consequence of the work performed." 29 C.F.R. § 541.202(a).

The Court finds that genuine fact disputes exist as to whether Dukes's role as Office Manager required discretion and independent judgment. According to Dukes, she possessed very little decision-making authority as most of her tasks involved "basic clerical or secretarial work, tabulating data, filling out forms, relaying decisions made by others, or checking off to-do lists." Pl.'s Mot. Summ. J. 14, ECF No. 17-3. She points to testimony from Johansen stating that she was a "filter" for Garrett and consulted with Garrett the majority of the time so that she did not have to make final decisions. Johansen Dep. 118:12–13. Dukes characterizes this testimony as an admission that Dukes did not have sufficient authority to exercise discretion or independent judgment and that she is thus entitled to a finding as a matter of law that Dukes was not administratively exempt from the FLSA. But employees may still exercise discretion and independent judgment if their decisions and recommendations are reviewed at a higher

9

level. 29 C.F.R. § 541.202(c). And Defendants pointed to evidence that Dukes—as the Office Manager for all CCTF's offices—possessed significant responsibilities that a reasonable jury could conclude required discretion and independent judgment on her part. For example, Dukes processed payroll, completed tax reporting and payment, conducted screening interviews for prospective employees, performed employee evaluations, sent invoicing, paid bills, maintained personnel records, processed leave, completed paperwork necessary for business travel, monitored and transferred money between bank accounts, and provided daily reporting for the company. Dukes also supervised three employees and testified that she would provide her opinion on those employees' job performance and whether they should be entitled to a raise or increased job responsibilities. Dukes Dep. 70:18-71:15, ECF No. 21. The Court is satisfied based on this evidence that genuine fact disputes exist as to whether Dukes had the authority to exercise discretion and independent judgment as to matters of significance.

As to Hinton, the Court reaches the same conclusion. Although Plaintiffs' counsel downplays Hinton's role as simply working off a checklist and compiling documents, a reasonable jury could find that Hinton's role required discretion and independent judgment. For example, Defendants pointed to evidence that Hinton was responsible for determining whether individual patients were deployable based on their medical results. She would also review

medical screens, travel with the company on business, and confer with clients to schedule medical appointments, labs, and mental health assessments. Like Dukes, Hinton was involved in interviewing potential employees. She also assisted Garrett in helping to locate potential staff in new markets. Genuine fact disputes exist as to whether Hinton possessed the discretion and independent judgment necessary to meet the administrative exemption.

Plaintiffs also argue that Defendants cannot establish that Plaintiffs meet the minimum salary requirement of the administrative exemption for the relevant timeframe. Plaintiffs do not dispute that Dukes and Hinton made more than $684.00 on a salary basis for most of their employment with CCTF. The core dispute centers on the periods at the end of Plaintiffs' employment during which Plaintiffs contend they were not paid their salaries: ten weeks as to Dukes and three weeks as to Hinton.[3] Defendants maintain that they issued paychecks to Plaintiffs for most of these weeks, and that the salary basis requirement is met for those weeks.[4] Plaintiffs, however, assert that the checks were not

---

[3] Plaintiffs did not assert breach of contract claims regarding any nonpayment or underpayment; their only claims in this action are under the FLSA.
[4] Regarding Dukes, Defendants do not dispute that she was employed by Defendants for eight of the ten weeks for which Dukes alleges she was not paid. The parties dispute whether Dukes was still employed by Defendants for the ninth and ten weeks.

11

payable on demand and that they thus did not constitute compensation of the minimum salary for these weeks.

The Court finds that genuine fact disputes remain on the administrative exemption minimum salary requirement. As to Dukes, she acknowledges that despite receiving physical paychecks for eight weeks, she did not timely attempt to cash or deposit the paychecks when they were issued.[5] Although Dukes pointed to evidence that she did not attempt to cash or deposit the paychecks because (1) she perceived that they contained insufficient funds based on her access to the company payroll accounts, and (2) Johansen and Garrett instructed her to hold her paychecks, Defendants pointed to evidence that the bank would have honored the paychecks had Dukes attempted to cash or deposit them. Specifically, Defendants cite bank records demonstrating that the bank had apparently honored paychecks on numerous occasions despite their payroll and overdraft accounts containing insufficient funds. *See, e.g.*, Johansen Dep. Ex. 14, February 2022 Payroll Account Records 2, ECF No. 19-14 at 12–13; Johansen Dep. Ex. 14, March 2022 Payroll Account Records 2, ECF No. 19-14 at 16; Johansen Dep. Ex. 14, April 2022 Payroll Account Records 2, ECF No. 19-14 at 19. Dukes rebutted these facts with evidence from the same records that Defendants' bank refused to cash or

---

[5] Dukes attempted to cash the checks much later but was unsuccessful.

deposit checks when the payroll and overdraft accounts contained insufficient funds. *See* Johansen Dep. Ex. 14, November 2021 Payroll Account Records 3, ECF No. 19-14 at 3; Johansen Dep. Ex. 14, December 2021 Payroll Account Records 3, ECF No. 19-14 at 6; Johansen Dep. Ex. 14, January 2022 Payroll Account Records 3, ECF No. 19-14 at 9; February 2022 Payroll Account Records 4, ECF No. 19-14 at 14; Johansen Dep. Ex. 14, May 2022 Payroll Account Records 2, ECF No. 19-14 at 22. Although the parties contend that these facts demonstrate that they are each entitled to summary judgment, the Court disagrees and finds that they create a genuine factual dispute as to whether the checks were payable on demand. The parties' contentions essentially boil down to a dispute over whether the bank would have honored the paychecks had Dukes attempted to cash or deposit them. Plaintiffs' evidence indicates that the bank would not have honored the paychecks, while Defendants pointed to evidence indicating otherwise. Based on the disputed evidence, a reasonable jury could resolve the issue either way.[6]

---

[6] Dukes also claims she was not paid for the last two weeks of her employment at CCTF. She did not receive a physical paycheck for these two weeks. Defendants maintain that Dukes was not included in payroll for these weeks, and thus was not issued a paycheck, because she was no longer employed by CCTF. The Court finds that fact disputes exist as to whether Dukes was still employed by CCTF during this period. Dukes testified that she was still working at CCTF during this period, Dukes Dep. 139:25-141:7, while Defendants pointed to evidence indicating the opposite. Johansen Dep. 220:7-25; Melton Decl. ¶¶ 3-4, ECF No. 22-6.

13

As to Hinton, she claims she was denied pay for three weeks of work. Defendants issued Hinton a paycheck numbered 3679 for $2,148.00 for the first two of these weeks, but as with Dukes, the funds in Defendants' payroll and overdraft accounts were insufficient to cover the check. Unlike Dukes, Hinton twice attempted to cash the check when she received it, but she claims both vendors refused. Hinton Aff. ¶ 4, ECF No. 23-3; Hinton Aff. Ex. B, Walmart Disbursement Receipt 1, ECF No. 23-3 at 8. Hinton informed Garrett, who then sent $600.00 to Hinton via Cash App in partial payment of the $2,148.00 paycheck. Pls.' Reply to Defs.' Resp. to Mot. Summ. J. Ex. A, Text Message from Garrett to Johansen (May 2, 2022, 11:23 AM), ECF No. 24-1 at 10; Johansen Dep. 218:4-16. Hinton never received the rest of the paycheck. Hinton Aff. ¶ 5. Defendants never issued Hinton a paycheck for her last week of work.

Regarding the two-week period for which Hinton received a physical paycheck, the Court finds that genuine fact disputes exist as to whether Hinton attempted to cash or deposit her paycheck when it was issued. Although Hinton testified that she attempted to cash her check at Wells Fargo, her regular practice, CCTF's bank records do not indicate such an attempt. Further, while Hinton pointed to evidence that she attempted to cash the check at Walmart and that Walmart refused to honor the check, that evidence does not state the reasons why Walmart could not honor the check.

14

Defendants further point to evidence that if Hinton had attempted to cash or deposit the check at a financial institution, then the check would have been honored per Defendants' overdraft agreement with Wells Fargo. Hinton pointed to evidence indicating otherwise. Accordingly, the Court finds that genuine fact disputes remain as to whether Hinton attempted to cash or deposit her paycheck at a financial institution, and if she had, whether the paycheck would have been honored. The parties' motions for summary judgment are denied on this issue.

As to the missing paycheck for Hinton's last week of work, Defendants do not appear to dispute that Hinton is owed wages from that last week of work so long as she is not exempt from the FLSA. This presents the question: does the exemption apply when an employer has agreed to pay a salary that meets the minimum salary prong but breaches its agreement to do so. Eleventh Circuit precedent exists supporting an affirmative answer to the foregoing question. *See Nicholson v. World Bus. Network, Inc.*, 105 F.3d 1361, 1365 (11th Cir. 1997) (holding that the determination of an employee's salary basis for purposes of the administrative exemption is based on the salary that an employee is owed under his or her employment agreement—not what the employee actually received). But the Eleventh Circuit seems to have distinguished this precedent in a more recent opinion, explaining that the Court in *Nicholson* was interpreting language contained in outdated

15

Department of Labor regulations. *Pioch v. IBEX Eng'g Servs., Inc.*, 825 F.3d 1264, 1270-71 (11th Cir. 2016); *see also Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 848 (6th Cir. 2012). That regulatory language relied upon by the Eleventh Circuit has since been removed from the applicable regulation, and the Eleventh Circuit has recognized in dicta that the removal of that language "cuts against" its interpretation of the salary-basis test in *Nicholson*. *Pioch*, 825 F.3d at 1271. The Court finds, however, that although *Pioch* may have cast some doubt on the holding in *Nicholson*, it did not overrule it. And when clear binding precedent exists on an issue that is clouded by subsequent dicta in a three-judge panel decision, the district courts must follow the previous binding precedent. Accordingly, Plaintiffs' motion for summary judgment is denied on this issue. The jury will decide whether Hinton was administratively exempt from the FLSA for her last week of work.

### III. Are Plaintiffs Entitled to Overtime Wages?

"Under the FLSA, an employer may not employ his employee for a workweek longer than forty hours unless his employee receives overtime compensation at a rate not less than one and a half times his regular rate." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314 (11th Cir. 2007) (citing 29 U.S.C. § 207(a)(1)). Based on the present record, the Court finds that genuine fact disputes exist as to whether Plaintiffs worked overtime, and if

16

so, how much overtime they worked. Plaintiffs' motion for summary judgment as it relates to their claims for overtime wages is therefore denied.

## IV. Did Defendants Willfully Violate the FLSA?

Plaintiffs further move for a judgment as a matter of law that Defendants willfully violated the FLSA. An employer may "willfully" violate the FLSA if it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Plaintiffs pointed to evidence that Johansen understood her obligations under the FLSA and knew that there was a payroll backlog, including that Dukes had paychecks outstanding and that Hinton had only received partial pay. Johansen Dep. 170:6–171:25; Text Messages (Dec. 3, 2022), ECF No. 19-9 at 1; Pls.' Reply to Defs.' Resp. to Mot. Summ. J. Ex. A, Text Message Exchanges Between Johansen and Garrett, ECF No. 24-1 at 10, 18, 22, 43–44. Although Johansen professes to have believed that Plaintiffs were administratively exempt from the FLSA, Defendants did not point to evidence rebutting the contention that she did not make efforts to comply with the FLSA. Based on the present record, the Court finds that genuine fact disputes exist as to whether Defendants' alleged FLSA violations were willful. Plaintiffs' motion for summary judgment is denied on this ground.

CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment (ECF No. 17) is granted in part and denied in part. Defendants' motion for summary judgment (ECF No. 16) is denied.

IT IS SO ORDERED, this 21st day of May, 2024.

                                        S/Clay D. Land  
                                        CLAY D. LAND  
                                        U.S. DISTRICT COURT JUDGE  
                                        MIDDLE DISTRICT OF GEORGIA